UBS FINANCIAL SERVICES, INC.
and UBS CREDIT CORP.,

        Plaintiffs,

  v.

Case No. 21-cv-421-pp

DAVID ALAN MOXOM,

        Defendant.

**ORDER GRANTING PLAINTIFFS' "MOTION FOR CLERK'S ENTRY OF DEFAULT JUDGMENT" (DKT. NO. 17), CONFIRMING ARBITRATION AWARD AND DISMISSING CASE**

**I.    Factual Dispute**

On April 2, 2021, the plaintiff[1] filed a petition to confirm an arbitration award under 9 U.S.C. §9. Dkt. No. 1. The petition explained that in March 2016, the defendant had begun work as a financial advisor for the plaintiff at its Milwaukee branch. Id. at ¶7. The defendant obtained five loans totaling over $1,269,000 during his employment with the plaintiff. Id. at ¶8. The defendant's employment terminated February 6, 2019, at which time the unpaid balances of the loans became immediately due and payable to the plaintiff. Id. at ¶¶10-11. The defendant did not pay those loans. Id. at ¶11 (the petition has two paragraphs numbered "11."—this is the second one). On February 10, 2020, an

---

[1] The plaintiffs refer to themselves collectively as "UBS," so the court will refer to them as a singular entity.

arbitrator with the Financial Industry Regulatory Authority issued an award against the defendant and in favor of the plaintiff. Id. at ¶14, pp. 507. The defendant has not paid that award. Id. at ¶17.

## II.     Facts Relating to Service

When requesting a summons for service of the petition, the plaintiff listed the defendant's address as 5074 N. Woodburn Street, Whitefish Bay, Wisconsin 53217-5758. Dkt. No. 1-2.

On June 30, 2021, the plaintiff filed several affidavits of non-service. It filed affidavits from a company called Professional Process Servers, indicating that between April 7 and April 21, 2021, several attempts had been made to serve the defendant. Dkt. No. 7. On April 7, 2021, process server Kurt Schultz had tried twice to serve the defendant at the Woodburn Street address. Id. at 3-4. The first attempt was at 10:05 a.m.; although the doorbell worked, there was no answer, and Schultz posted his name and number. Id. The second attempt was at 7:17 p.m.; Schultz wrote, "Calling from 262-573-8911, the occupant of the address advised affiant she bought the property in March 2020 and she does not know David Alan Moxom; affiant found no other address for David Alan Moxom on CCAP or Whitepages." Id.

Between April 13 and April 21, 2021, process server Devin Sura made eight attempts to serve the defendant at 300 North Corporate Drive #270, Brookfield, Wisconsin 53045. Id. at 1-2. Sura visited the location on April 13 in the afternoon, finding the entrance locked and no lights on inside. Id. There was office furniture inside; when Sura called the telephone number for "Novo

2

Group," a woman indicated that "David does work here but he is working remotely." Id. The woman would not provide Sura with the defendant's information but took Sura's name and number to pass on. Id. A few minutes later, the defendant called Sura and agreed to meet him on Thursday; they arranged that the defendant would call Sura in the late morning on Thursday to arrange the meeting. Id. On April 15, 2021, however, when Sura called the defendant, there was no answer; Sura left a message. Id. The same happened when Sura called on April 16 and April 19, 2021. Id. Sura again went to the Brookfield office address on April 20—again, there was no answer, the door was locked, there were no lights on inside and no people visible. Id. Sura left a phone number on the door. When Sura returned on April 21, 2021, the situation was the same—no answer, door locked, no one inside and the phone number Sura had left remained on the door. Id. Finally, on the afternoon of April 21, "Mike McElherne, CEO of Novo Group, called affiant . . . , advised affiant [that] David Alan Moxom no longer works for company, David quit last Friday, did not have an address for David that he could provide[]." Id.

The plaintiff also filed an affidavit from process server Stephen Majors. Dkt. Nos. 4. Dated April 28, 2021, the affidavit indicated that on the previous day—April 27, 2021—Majors had tried to serve the defendant at the Woodburn Street address. Dkt. No. 4. Majors indicated that the homeowner indicated the defendant had moved and that the home had been sold in March 2020. Majors spoke to three neighbors, none of whom knew much about the defendant. One neighbor indicated that he was friends with the defendant on Facebook and

3

that the defendant was working at a place called NOVO Group. Id. Majors checked this online—he did not say how—and that the information "seem[ed] to be confirmed." Id. NOVO Group was listed as a garnishee for the defendant on CCAP since March 2021. Id.

The plaintiff filed an affidavit of non-service from process server Les B. Johns. Dkt. No. 3. Johns averred that he had tried several times to serve the defendant at the Woodburn Street address, and that he had also done a "Delvepoint" search and found an alternative address of 2111 East Ivanhoe Place, Apt. 315. Id. at 2. Johns indicated that though he'd tried serving the defendant seven times in the month of May 2021, at various times of day on different dates, and had left messages and business cards, he had been unable to serve the plaintiff; he indicated that he believed the plaintiff was attempting to avoid service. Id.

The plaintiff filed an affidavit from process server Brad Klaus, dated May 23, 2021. Dkt. No. 6. On May 20, 2021, Klaus visited Novo Group at 300 North Corporate Drive, #270, Brookfield, Wisconsin 53045. Id. Klaus indicated that the office was "not occupied, possibly closed for covid reasons." Id. Klaus indicated that he left "multiple messages on provided cell for David Moxom but received no response." Id. Specifically, Majors made the following efforts:

* May 3, 2021—served paper on managing director Natalie Forward.
* May 7, 2021—office was closed, left message on defendant's cell.
* May 8, 2021—left message on defendant's cell.
* May 9, 2021—left message on defendant's cell.

4

* May 12, 2021—office was not occupied, left message on defendant's cell.

* May 16, 2021—left message on defendant's cell.

* May 20, 2021—office not occupied, possibly for COVID reasons.

Id.

Finally, the plaintiff filed a second affidavit from Majors, this one dated May 24, 2021. Dkt. No. 5. It indicated that on May 19, 2021, Majors had attempted to serve the defendant at a different address—a two-story, single-family home at 4922 N. Hollywood Avenue, Milwaukee, WI 53217. Id. Majors spoke to the defendant's son, who said that the defendant did not live there "but took a delivery notice to pass on to him." Id. While Majors was at the address, the defendant's ex-wife arrived; she indicated that the defendant never had lived at that address and that she had no idea where he currently lived. The defendant's son—who appeared to Majors to be between 16 and 18 years old—did see the defendant. Id.

On August 11, 2021, the plaintiff filed a motion seeking leave to effectuate service by alternative means, or in the alternative, for an extension of sixty days to serve the defendant. Dkt. No. 8. In the accompanying brief, the plaintiff laid out the efforts it had made to serve the defendant, including using a process server in Milwaukee, a national process server and private investigators. Dkt. No. 9. It recounted that it had made over thirty attempts to serve the defendant and asserted that the defendant knew the plaintiff was trying to serve him. Id. at 5. On February 9, 2022, the court granted the

plaintiff's motion for alternative service. Dkt. No. 11. It ordered that the plaintiff could serve the defendant by first-class mail at the Woodburn and Ivanhoe addresses and that it could serve by publication. Id. at 6-7. The court gave the plaintiff a deadline of April 11, 2022 by which to effectuate service. Id. at 7. The same day, the plaintiff filed a certificate of service for the mailed service to the Woodburn and Ivanhoe addresses. Dkt. No. 12. A month later, UBS Financial Services filed proof of publication in The Daily Reporter, attesting to service for three consecutive weeks in February and March 2022. Dkt. No. 13.

On April 21, 2022, the plaintiff filed a "motion for clerk's entry of default," dkt. no. 14, and an affidavit in support of that motion, dkt. no. 16. Stating that the plaintiff had effected service via first-class mail on February 9, 2022 and by publication on February 18, 2022, February 25, 2022 and March 4, 2022, the plaintiff asserted that the defendant's answer was due on March 25, 2022. Dkt. No. 14 at 1-2 (citing Fed. R. Civ. P. 12(a)(1)(A)(i)). The plaintiff reported that the defendant had failed to respond by that deadline and asserted that it was entitled to entry of default under Rule 55(a). Id. The clerk entered default the next day.

On April 26, 2022, the plaintiff filed a "motion for clerk's entry of default judgment," dkt. no. 17, and an affidavit in support of the motion for default judgment, dkt. no. 19. The plaintiff argues that under Rules 55(a) and (b)(1), "UBS is entitled to have the Clerk of the Court enter judgment after default against the Defendant." Dkt. No. 17 at 2. The plaintiff states that its claim "is 'for a sum certain or for a sum which can by computation be made certain.'" Id.

6

Case 2:21-cv-00421-PP    Filed 08/17/22    Page 6 of 13    Document 20

It asks the clerk "to enter a Default Judgment against Defendant, David Alan Moxom, that confirms the FINRA Arbitration Award in its entirety and grants monetary damages to Plaintiffs in the amount of $1,023,838.23." Id. The certificate of service indicates that the plaintiff served the defendant a copy of its motion at both the North Woodburn and East Ivanhoe Place addresses. Id. at 4.

The plaintiff filed the motion for default judgment on April 26, 2022. Under Civil Local Rule 7(b) (E.D. Wis.), the defendant had twenty-one days from the date of service of the motion—or until May 17, 2022—to respond. The defendant has not responded to the motion. In fact, the defendant has not appeared during the sixteen months this litigation has been pending.

This order grants the plaintiff's motion, confirms the arbitration award, orders the clerk to enter default judgment in favor of the plaintiff and against the defendant and dismisses the case. The court has not been able to serve the defendant with the one order it issued (Dkt. No. 11) because it had no valid address for the defendant. There is evidence, however, that the defendant is aware of the lawsuit—the plaintiff left notice with the defendant's former co-workers and his son and one process server spoke with the defendant to arrange a meeting (although the defendant did not follow through with that meeting).

### III. Motion for Default Judgment (Dkt. No. 17)

A. <u>Clerk's Entry of Default</u>

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party must first seek an entry of default based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Rule 4(e)(1) allows a plaintiff to serve an individual using the methods allowed by state law in the state where the federal district is located. Wisconsin law requires a plaintiff to attempt service on an individual either by personally serving the summons or, if the plaintiff cannot serve the defendant personally with reasonable diligence, by "leaving a copy of the summons at the defendant's usual place of abode in the presence of some competent member of the family at least 14 years of age, who shall be informed of the contents thereof." Wis. Stat. §801.11. Under Wis. Stat. §801.11(1)(c) describes service by publication and mail and indicates that if a plaintiff cannot effect personal service "with reasonable diligence,"

> service may be made by publication of the summons as a class 3 notice, under ch. 985, and by mailing. If the defendant's post-office address is known or can with reasonable diligence be ascertained, there shall be mailed to the defendant, at or immediately prior to the first publication, a copy of the summons and a copy of the complaint. The mailing may be omitted if the post-office address cannot be ascertained with reasonable diligence.

<u>Id.</u> Chapter 985 requires that legal notice be published "in a newspaper likely to give notice in the area or to the person affected." Wis. Stat. 985.02(1).

8

The court granted the plaintiff's motion for alternative service on February 9, 2022. Dkt. No. 11. The court noted that "[t]he plaintiffs ha[d] attempted to serve the defendant over thirty times through a Wisconsin private process server, a national process server and a licensed private investigator." Id. at 6. It observed that the plaintiff had "demonstrated that the defendant agreed to meet with [process server] Devin Sura, but that the defendant 'refused to answer Sura's call on the day of the meeting' and subsequently refused to answer other calls." Id. For those reasons, the court found that the plaintiff had attempted to serve the defendant with reasonable diligence. Id. The court ordered that the plaintiff "must effectuate service upon the defendant by:

> a. first class mail of the petition and summons to 5074 North Woodburn Street, Whitefish Bay, Wisconsin 53217-5758;
>
> b. first class mail of the petition and summons to 2111 East Ivanhoe Place, Apartment 315, Milwaukee, Wisconsin 53202; and
>
> c. publication of the Summons as a class 3 notice under Wis. Stat. §985.

Id. at 6-7. The court set a deadline of April 11, 2022 for the plaintiff to serve the defendant "in accordance with [the] order and to file proof of service." Id. at 7. It required the plaintiff to "serve a copy of this order on the defendant contemporaneously with service of the petition and summons through first class mail to both of the above addresses." Id.

The same day that the court granted the plaintiff's motion for alternative service, the plaintiff filed proof of service. Dkt. No. 12. The proof of service indicates that the plaintiff's attorney, Noah Menold, served by United States

9

First Class Mail a copy of the petition, the summons and the order granting the motion for alternative service on the defendant at both the North Woodburn Street and East Ivanhoe Place addresses. Id. It reflected that Attorney Menold "submitted the Summons to Publication Point, LLC on February 9, 2022 for publication as a class 3 notice under Wis. Stat. § 985, and that [Menold would] file an Affidavit of Publication once the Summons is published in accordance with the statute." Id.

The court finds that the plaintiff has effected service on the defendant under Wis. Stat. §801.11(c).

On March 11, 2022, the plaintiff filed proof of publication. Dkt. No. 13. The proof of publication reproduced the notice of the summons that *The Daily Reporter* newspaper published on February 18, 2022, February 25, 2022 and March 4, 2022. Id. It indicates that *The Daily Reporter*

> is a public newspaper of general circulation, printed and published daily in the English language in the City of Milwaukee, in said county, and fully complying with the laws of Wisconsin, relating to the publication of legal notices; that the notice of which the printed one attached is a true copy, which was clipped from the said newspaper, was inserted and published in said newspaper on Feb. 18, 2022, Feb. 25, 2022 Mar. 4, 2022.

Id.

According to its website, "[t]he Daily Reporter offers a large number of searchable legal advertisements and public records from the city of Milwaukee and surrounding municipalities." https://dailyreporter.com/about/. The court finds that publication in *The Daily Reporter* satisfies the publication

10

requirement for a newspaper likely to give notice to the defendant under Wis. Stat. §985.02(1).

Because the court has concluded that the plaintiff effected service and because the defendant—despite evidence that he is aware of the lawsuit—has not responded, it was appropriate for the clerk to enter default on April 22, 2022.

    B.    <u>Default Judgment</u>

        1.    *Standard*

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. <u>e360 Insight v. The Spamhaus Project</u>, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." <u>Id.</u> However, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." <u>Id.</u> (quoting <u>In re Catt</u>, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. <u>Id.</u> Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). Such proceedings are unnecessary, however, if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or

11

Case 2:21-cv-00421-PP   Filed 08/17/22   Page 11 of 13   Document 20

in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v Howard Pipe & Concrete Prods., Inc., 722 F2d 1319, 1323 (7th Cir. 1983)).

    2.    *Application*

The petition to confirm the arbitration award provides that "[o]n February 10, 2020, a FINRA arbitrator issued an award . . . against Defendant and in favor of UBS in the amount of (a) $999,389.39 for compensatory damages on the loan balances, (b) $17,948.84 for interest, (c) $5,375.00 for attorneys' fees incurred, and (d) $1,125.00 for costs incurred." Dkt. No. 1 at 3 (citing Exhibit A, Id. at 5). In total, the plaintiff seeks enforcement of an award of $1,023,838.23. Dkt. No. 17 at 1. In support of its request, the plaintiff provided a copy of FINRA Arbitrator Mark A. Frankel's decision in UBS Financial Services Inc. and UBS Credit Corp. v. David Moxom, FINRA Office of Dispute Resolution Case No. 19-02873. Dkt. No. 1 at 5-7. In that decision, Arbitrator Frankel

> decided and determined in full and final resolution of the issues submitted for determination as follows: 1) [Defendant] is liable for and shall pay compensatory damages to [Plaintiff] in the amount of $999,389.39. 2) [Defendant] is liable for and shall pay interest to [Plaintiff] in the amount of $17,948.84. 3) [Defendant] is liable for and shall pay attorneys' fees to [Plaintiff] the amount of $5,375.00, pursuant to the terms of the Notes. 4) [Defendant] is liable for and shall pay to [Plaintiff] the sum of $1,125.00 in costs, as reimbursement for the non-refundable portion of [Plaintiff's] filing fee. 5) All other relief requests are denied.

Id. at 5.

The plaintiff has supported the amount of compensatory damages, interest, attorneys' fees and costs through affidavit. Dkt. No. 19 at ¶¶6-13. The

12

evidence that the plaintiff has provided is sufficient to demonstrate that the defendant owes the plaintiff $1,023,838.23. The court will grant the plaintiff's motion, enter default judgment in favor of the plaintiff and against the defendant confirming the FINRA arbitration award in its entirety, award monetary damages to the plaintiff in the amount of $1,023,838.23 and dismiss the case.

## IV. Conclusion

The court **GRANTS** the plaintiff's "motion for clerk's entry of default judgment." Dkt. No. 17.

The court **ORDERS** that the award that Arbitrator Frankel issued in FINRA Case No. 19-02873 is **CONFIRMED** under 9 U.S.C. §9.

The court **ORDERS** that the clerk must enter default judgment in favor of the plaintiff and against the defendant in the amount of $1,023,838.23.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 17th day of August, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**